# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION
## NOT FOR PUBLICATION

October 31, 2007

Andrew Walzer
771 Bradley Parkway
Blauvelt, NY 10913
    (*Plaintiff Pro Se*)

Dennis George Harraka
Ferrara, Turitz, Harraka & Goldberg, P.C.
505 Main Street
Hackensack, NJ 07601
    (*Attorney for Township Defendants*)

Mark P. Ciarrocca
Ciarrocca & Ciarrocca, Esqs.
1155 W. Chestnut Street
P.O. Box 303
Union, NJ 07083-0303
    (*Attorney for Defendant Tumino's Towing*)

      **RE:  Andrew Walzer v. Township of Teaneck, Jill Graham,
           Kevin Johnson, Helene Fall, Howard Solomon, State of New
           Jersey, and Tumino's Towing
           <u>Civ. No. 05-734 (WJM)</u>**

Dear Litigants:

    This case arises from a 2003 traffic ticket received by Plaintiff Andrew

Walzer in Teaneck, NJ.  Plaintiff contested the ticket and requested a hearing.  Because he had failed to maintain a current address with the Department of Motor Vehicles ("DMV"), however, Plaintiff did not receive notice of the court date.  After Plaintiff failed to appear for the hearing, his license was suspended and a bench warrant issued.  A few months later, Plaintiff was arrested and his car was impounded.  A series of related consequences followed.

In a rambling, incoherent complaint, Plaintiff, who is *pro se*, attempts to allege constitutional violations by the Township of Teaneck and several individual Township employees (hereinafter, "Township Defendants"),[1] as well as the State of New Jersey and the company that towed Plaintiff's car, Tumino's Towing.  The Township Defendants and Tumino's Towing have moved for summary judgment.  For the reasons stated herein, the motions for summary judgment are **GRANTED**.

## Relevant Facts

The uncontested facts of this case are straightforward.  On April 13, 2003, Plaintiff was ticketed for making an improper turn in Teaneck, NJ, in violation of N.J. Stat. 39:4-123.  (Am. Compl. Ex. A.)  A Fairview, NJ address for Plaintiff is listed on the summons.

On April 16, 2003, Plaintiff sent a letter to the Teaneck Municipal Court stating that he disputed the ticket and wished to plead not guilty, and requesting that discovery be mailed to him ten days prior to trial at a Blauvelt, NY address given on the letter.[2]  (*Id.* Ex. B.)  In response, Teaneck Municipal Court sent a

---

[1]   Plaintiff's original Complaint, filed on February 4, 2005, originally named five Defendants — the Township of Teaneck, Teaneck Court Administrator Jill Graham, Teaneck employee Kevin Johnson, Teaneck Township Supervisor Helene Fall and Teaneck assistant prosecutor Howard Solomon.  On February 25, 2005, Plaintiff added two Defendants, the State of New Jersey and Tumino's Towing.  The State of New Jersey did not enter an appearance in this case; it appears that Plaintiff failed to effect proper service pursuant to Fed. R. Civ. P. 4(j)(2).

[2]   The letter did not indicate that Plaintiff wished to change his mailing address of record with the Court.  (*See* Am. Compl. Ex. B.)  It requested that

letter to Plaintiff's Blauvelt, NY address on April 21, 2003. (*Id.* Ex. C.) The letter stated that the Violations Bureau is not empowered to dismiss tickets, and informed Plaintiff that if he wished to contest the matter he must contact the court office within ten days so that his matter could be scheduled for court. The letter included a handwritten note stating "You will receive a notice to appear in court."

On April 22, 2003, a computer-generated notice of a May 7, 2003 hearing was sent to Plaintiff's Fairview, NJ address, which was his address of record with the DMV as well as the address on the summons, on his driver's license and on his vehicle's registration. (*Id.* Ex. A; Walzer Dep. 38:20-25; 49:24-50:16; Graham Dep. 64:23-65:2; Twp. Defs.' Br. Supp. Summ. J. ("Twp. Defs.' Br.") Ex. J.; Pl.'s Br. Opp. Summ. J. Ex. A.) Plaintiff claims he no longer lived in Fairview, NJ and never received the notice, but the Court Administrator, Defendant Jill Graham, testified that the notice was not returned in the mail[3]. (Graham Dep. 43:13-17.) Graham also testified that such hearing notices are computer-generated and sent automatically to the address on record with the DMV. (*Id.* 15:13-16:13, 47:19-48:12, 54:20-55:19, 64:23-65:2.)

Plaintiff failed to appear at the May 7, 2003 hearing, which led to the issuance of a bench warrant and the suspension of his driver's license on June 27, 2003. (Am. Compl. Ex. D; Twp. Defs.' Br. Ex. O.)

On October 5, 2003, Plaintiff was pulled over and arrested pursuant to the

---

discovery — a written statement from the officer detailing what Plaintiff did wrong — be sent to his Blauvelt, NY address, but did not specify that notice of court dates should also be sent to that address, and did not affirmatively request a change of address. Moreover, although Plaintiff's letter pointed out that Plaintiff's name was spelled wrong on the ticket, it did not indicate that the Fairview, NJ address on the ticket was incorrect.

[3] Plaintiff testified that he could not remember exactly when he moved away from the Fairview, NJ address (Walzer Dep. 45:13-23, 54:25-55:22), but did recall that he bought his home in Blauvelt, NY in 2000 (*id.* 21:2-23:2). Plaintiff also testified that his mail was forwarded for a period of time after he moved away from Fairview, NJ, but that the mail forwarding eventually stopped at some point prior to April 2003. (*Id.* 55:9-22.)

warrant, and was charged with driving with a suspended license and driving an unregistered vehicle.[4] (Twp. Defs.' Br. Ex. K.) Plaintiff's car was impounded, and he was arrested and taken to the police station. The total amount of the fine and associated fees, $115, was paid in bail to secure his appearance at his next court date, which was set for October 8, 2003. (Am. Compl. Ex. D.)

On October 7 and 8, Plaintiff called Municipal Court and was informed that his October 8, 2003 court date had been adjourned to November 10, 2003. (*Id.* ¶ 16.) Plaintiff, however, did not want to wait that long to get his driver's license back. (*Id.* ¶¶ 16-18.) He went to the Violations Bureau on October 10, 2003 to attempt to get his license reinstated. (*Id.* ¶ 18.) The staff there could not immediately locate his file with the $115 paid in bail a few days prior, so Plaintiff paid $115 again[5] and received a receipt, which he later took to the DMV and had his license restored. (*Id.* Exs. D, G.) Plaintiff's payment was docketed by the Violations Bureau as a plea of guilty, and a note was made in the file that Plaintiff "paid at VB, does not want to come to court." (Twp. Defs.' Br. Exs. O, Q.)

Plaintiff subsequently appeared for court on November 10, 2003, only to learn that his case was not on the docket, having been dismissed because he had pleaded guilty by paying the fine. (Am. Compl. ¶¶ 19-21.) Plaintiff claims that Defendant Kevin Johnson[6] refused to give him a printed disposition of his case, (*id.* ¶¶ 22-23), and that Defendant Helene Fall failed to investigate his complaints and failed to properly supervise the employees of Teaneck (*id.* ¶ 24). Plaintiff also names Teaneck prosecutor Howard Solomon as a Defendant because Mr. Solomon allegedly refused to discuss Plaintiff's case with him that day when Plaintiff appeared in court but had no case on the docket. (*Id.* ¶ 20.)

---

[4] The charge of driving while suspended was dismissed on November 14, 2003, and the unregistered vehicle summons was reduced to a charge of not having vehicle registration in possession, with a fine of $173. (Am. Compl. Ex. L.)

[5] The original $115 bail payment was later refunded to Plaintiff.

[6] The individual Plaintiff intended to sue is apparently named Kevin Robinson, not Kevin Johnson, but no amendment to the caption was sought. (*See* Twp. Defs.' Answer ¶ 23.)

In August 2004, Plaintiff turned in his New Jersey driver's license and acquired a New York license. (*Id.* ¶ 27.) Plaintiff was pulled over on December 8, 2004, however, and told that his privileges of driving in New Jersey had been revoked because he had failed to pay certain insurance surcharges which are assessed once a driver has more than six points on his license.[7] (*Id.* ¶¶ 27, 35; Tumino's Br. Supp. Summ. J. ("Tumino's Br.") Exs. B, D.) Because three of Plaintiff's seven license points were assessed as a result of what Plaintiff considers Teaneck's fraud — having pleaded him guilty on his improper turn ticket without a trial — Plaintiff considers both this revocation of driving privileges and the towing and impoundment of his car to be invalid. (Am. Compl. ¶¶ 27, 35-36.) Plaintiff also claims he was not given proper notice by Tumino's or the Ridgefield Police Department as to where his car was taken. (*Id.* ¶ 36.) Although he subsequently learned that his car was in fact at Tumino's, he has never gone to pick it up, and it is apparently still there. Plaintiff insists that his car was taken from him in violation of the constitution. (*Id.*)

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Equimark Commercial Financial Co. v. CIT Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987). In opposing summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; rather, only disputes over facts that might affect the outcome of the lawsuit, under the governing substantive law, will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. At the summary judgment stage, this Court must view all evidence and consider all reasonable inferences in a light most favorable to the non-moving party. *Marzano*

---

[7] The charge of driving with a revoked license was ultimately dismissed, but Plaintiff was found guilty of driving an unregistered vehicle. (Tumino's Br. Ex. D.)

5

*v. Computer Science Corp.*, 91 F.3d 497, 501 (3d Cir. 1996).

## Analysis

It is abundantly clear upon this Court's review of the record that no material facts are in dispute that would preclude the entry of judgment for Defendants as a matter of law. To the contrary, each of Plaintiff's alleged harms is directly attributable to Plaintiff's own acts and omissions. As the holder of a New Jersey driver's license, Plaintiff was required by law to maintain a current address with the New Jersey Department of Motor Vehicles.[8] His inexplicable failure to take this simple step led directly to his failure to appear in court, his license suspension, his arrest and the initial impoundment of his car, as well as the extra points and fees which led to the revocation of his New Jersey driving privileges and the second vehicle impoundment.

Nevertheless, mindful of Plaintiff's *pro se* status, the Court construes the Amended Complaint liberally, and we address each of his claims, as best we can discern them from his rambling, incoherent pleadings.

*Fraud and misrepresentation.* Plaintiff alleges fraud and misrepresentation on the part of various Teaneck employees. (Am. Compl. ¶¶ 13, 22, 27, 30, 32, 33.) He claims that Teaneck's April 21, 2003 letter was "tricky," and was designed to cause him to fail to appear for the May 2003 hearing. (*Id.* ¶¶ 30, 33.) He also contends that he was "tricked" into pleading guilty to his traffic ticket. (*Id.*) There is absolutely no support in the record for Plaintiff's bald allegations of fraud.

According to Plaintiff, when he paid his fine at the Violations Bureau on October 10, 2003, he believed that he was not pleading guilty but was merely paying bail again, and that he would still be able to challenge the ticket in court on November 10, 2003. However, there is no evidence that any Teaneck employee caused this mistaken belief, intentionally or otherwise. Moreover, the receipt Plaintiff received for his payment bore no mention of bail, but instead listed Plaintiff's violation and the associated fine and costs. (Twp. Defs.' Br. Ex. O;

---

[8] Pursuant to N.J. Stat. § 39:3-36, a licensed driver is required to notify the DMV of any change in residence within one week after the change is made.

Pl.'s Ex. D.)  Also, Plaintiff noted on his check that the $115 was for "Teaneck Ticket 009729," and made no mention of bail.

*Due process violations*.  Plaintiff alleges that he was deprived of his right to due process in violation of 42 U.S.C. § 1983.  To succeed on a procedural due process claim, a plaintiff must establish a deprivation of life, liberty or property without due process of law.

Plaintiff claims that Teaneck intentionally sent him a "tricky letter" to prevent him from learning about his hearing, then later entered a guilty plea on his behalf without his knowledge or consent, denying him the right to challenge his ticket.  (Am. Compl. ¶¶ 21-22, 33, 35.)  Plaintiff contends that he never pleaded guilty because he never signed the summons or swore under oath, but neither of these steps was required.  Under New Jersey Court Rule 7:12-4(d), "[t]he tender of payment for an offense to the Violations Bureau, without a signed guilty plea and waiver, may be accepted by the clerk, and shall have the effect of a guilty plea." (*See also* Am. Compl. Ex. O.)  Moreover, despite Plaintiff's claims that he misunderstood what happened at the ticket window, the receipt Plaintiff received made no reference to bail, but referred only to the improper turn ticket and its associated fees.  (Twp. Defs.' Br. Ex. O; Am. Compl. Ex. D.)  Again, Plaintiff also noted on his check that the $115 was for "Teaneck Ticket 009729," and made no mention of bail.

Plaintiff also claims that his driver's license was suspended without due process of law.  (Am. Compl. ¶ 15.)  On its face, Plaintiff's original summons for improper turn provides notice that both the issuance of an arrest warrant and the revocation of driving privileges are possible consequences of failure to appear in response to the summons or to pay the prescribed penalty.  (*See* Am. Compl. Ex. A.)  It is undisputed that Plaintiff failed to appear for the May 7, 2003 hearing, and that he did not pay the prescribed fine until October 10, 2003.[9]  (Twp. Defs.' Br. Ex. O; Am. Compl. Ex. D.)  Upon Plaintiff's ultimate payment of the fine,

---

[9] This Court has no evidence of whether any written notice was sent to the Plaintiff after his failure to appear but before his license was suspended.  In any event, such notice would have been futile, as Plaintiff's address with the DMV was still not current as of October 5, 2003, let alone as of May 7, 2003 when he failed to appear or June 27, 2003 when the suspension went into effect.

Plaintiff's license was restored.  Plaintiff fails to demonstrate that he was denied the type of process that was due under the circumstances of this case.

Finally, Plaintiff argues that his due process rights were violated when Teaneck adjourned his hearing from October 8, 2003 to November 10, 2003.  (Am. Compl. ¶¶ 16, 33.)  Under the circumstances, however, a one-month hearing adjournment does not rise to the level of a due process violation.

*False arrest*.  Plaintiff alleges that he was deprived of his right to be free from false arrest and unlawful imprisonment, in violation of 42 U.S.C. § 1983, when he was arrested on October 5, 2003.  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge [at the moment the arrest was made] are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  Here, it is undisputed that Plaintiff was arrested because the DMV's computer records reflected that a warrant for his arrest had been issued as a result of his failure to appear in court or pay his fine.  Plaintiff was also driving with a suspended driver's license and without current registration.  Plaintiff's arrest was supported by probable cause, and his false arrest claim is without merit.

Moreover, Plaintiff does not challenge the facial validity of the warrant pursuant to which he was formally arrested, and "[i]t is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment."  *Kis v. County of Schuylkill*, 866 F. Supp. 1462, 1469 (E.D. Pa. 1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)).

*Excessive force*.  Plaintiff alleges that he was deprived of his right to be free from excessive force, in violation of 42 U.S.C. § 1983, when he was arrested on October 5, 2003.  To state a claim for excessive force under the Fourth Amendment, a plaintiff must demonstrate that a seizure occurred and that it was unreasonable.  *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999).  Plaintiff claims that the officers kept his hands cuffed behind his back for several hours while he waited in the police station, and that this amounted to excessive force.  This minimal use of restraints, however, was objectively reasonable under the

circumstances.  *See Graham v. Connor*, 490 U.S. 386, 397 (1989).

  ***RICO.***  Plaintiff alleges that the Township of Teaneck was an organized criminal enterprise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, because it targeted him with fraud, harassment, false arrest and abuses of legal process when he tried to fight his traffic ticket.  (Am. Compl. ¶ 34.)  Plaintiff puts forth no evidence in support of this bald and conclusory RICO claim.

  ***Impoundment of Plaintiff's cars.***  Plaintiff alleges that his cars were towed and impounded by Tumino's Towing in violation of the Fourth Amendment.  (Am. Compl. ¶ 36.)  Plaintiff does not dispute that Tumino's Towing had police authorization to tow his vehicles on both occasions, but objects to the fact that his vehicles were "seized without a warrant being issued."  (*Id.*; Walzer Dep. 83:5-9.)  Plaintiff fails to state a constitutional violation.  On October 5, 2003, it is undisputed that Plaintiff was arrested pursuant to a warrant for failure to appear, and that he was driving with a suspended license.  (Am. Compl. ¶¶ 11, 15, Ex. L.)  He was also charged with driving an unregistered vehicle.  (Twp. Defs.' Br. Ex. K.)  On December 8, 2004, he was pulled over for driving with a revoked license and, once again, expired registration.  (Tumino's Br. Exs. B, D.)  In both instances, the police were within their authority to authorize the impoundment of Plaintiff's car by Tumino's Towing.

  Plaintiff also claims that Tumino's Towing negligently and improperly towed his car on October 5, 2003, resulting in $1600 in damages.  (Am. Compl. ¶ 36.)  Not only has Plaintiff failed to substantiate this damage claim with evidence, but he admits that he previously filed this claim in Bergen County Small Claims Court and lost.  (Tumino's Answer; Am. Compl. ¶ 36; Walzer Dep. 76:4-77:3.)

  Plaintiff also attempts to state an equal protection violation, claiming that because "many others (such as connected local citizens) don't have their cars impounded for such minor offenses."  (Am. Compl. ¶ 36.)  However, Plaintiff puts forth no evidence supporting this claim of unequal treatment.

  ***Failure to supervise.***  Plaintiff claims that various Teaneck personnel are liable for failing to supervise their employees.  Because Plaintiff has failed to put forth evidence that any Teaneck employee violated his constitutional rights,

however, Teaneck cannot be liable for failure to supervise.

*Claim against the State of New Jersey*.  Plaintiff claims that because he is currently a resident of New York and holds a New York driver's license, the State of New Jersey cannot require him to pay certain insurance surcharges.  (Am. Compl. ¶ 35.)  Plaintiff concedes that these surcharges resulted from license points he incurred while he held a New Jersey driver's license with a Fairview, NJ address.  (*See id.*)  He argues, however, that he should not be responsible for the surcharges because three of his seven license points were "'manipulated points' Teaneck NJ reported as part of Teaneck's fraud of denying [Plaintiff] a hearing and pleading him guilty in violation of due process."  (*Id.*)  Plaintiff's contention is wholly without merit.  Because it is clear that Plaintiff cannot prevail on his claim against the State of New Jersey, the Court will dismiss it pursuant to Fed. R. Civ. P. 12(b)(6).

## Conclusion

Any remaining wrongs which Plaintiff's Amended Complaint could arguably be attempting to state are so entirely lacking in merit that they warrant no further discussion.

For the foregoing reasons, the Motions for Summary Judgment filed by the Township Defendants and Tumino's Towing are **GRANTED**, and Plaintiff's Complaint is **DISMISSED** in its entirety.  An appropriate Order accompanies this Letter Opinion.

 s/William J. Martini
**William J. Martini, U.S.D.J.**